No. 8320.

JOHN PHELPS & CO. VS. Z. HOWELL.

E. & B. JACOBS, INTERVENORS.

</div>

A consignor or other person, who ships to his merchant or factor, to whom he owes a balance of account, cotton, sugar or other agricultural products, and who delivers the bill of lading or receipt therefor to the steamboat or other carrier, for transmission, can do no act which may affect or destroy the pledge flowing from such consignment, under the provisions of Act 66 of 1874.

Hence, the consignee's pledge cannot be destroyed or affected by a sale made of the consigned property "*in transitu*," by the consignor, who instructs the carrier to cancel and destroy the original bill of lading, to issue a new bill to another consignee, and to deliver the goods to a different order.

APPEAL from the Civil District Court for the Parish of Orleans. *Houston*, J.

*T. J. Semmes & Payne* for Plaintiffs and Appellees.

*W. S. Benedict* for the Intervenors, Appellants.

---

The opinion of the Court was delivered by

POCHÉ, J. Plaintiffs claim a privilege on thirty bales of cotton, consigned to them by defendant, from Shreveport, and sequestered by them on arrival of the cotton in this city. Intervenors claim the ownership of the cotton by reason of a sale to them by the defendant while the cotton was on the way from Shreveport to New Orleans.

The facts giving rise to the controversy are as follows:

On January 8th, 1881, defendant, a cotton dealer in Shreveport, shipped by steamer "Kate Kinney" to plaintiffs, his commission merchants and factors in New Orleans, sixty-seven bales of cotton, to be sold for his account, to credit of balance against him.

The consignment was made in two different lots; one of thirty-seven, and the other of thirty bales, each covered by separate bills of lading. On the same day he drew a draft of $2,000 against the lot of thirty-seven bales; and one of $1,500 against the lot of thirty bales, both of which drafts were drawn on plaintiffs, and both were discounted by intervenors. The draft of $1,500 was paid on presentation; but the thirty-seven bales of cotton, making the basis of the two thousand dollar draft, having been seized by a third party, in Shreveport, before the departure of the boat, payment of the same was refused by plaintiffs, who had been advised of the consignment, of the drafts, and of the seizure of a portion of the consignment.

On information of the dishonor of one of the drafts of defendant, intervenors, who, as bankers, were his creditors for a large balance of account, knowing his state of absolute insolvency, and all the circumstances surrounding the consignment of cotton to plaintiffs, prevailed on Howell to make a sale to them for $1,500, to be credited to his account with them of the thirty bales of cotton "*in transitu,*" and to instruct the carrier to cancel and destroy the bill of lading entrusted to it for transmission to the consignees, to issue new bills of lading and to deliver the cotton to intervenors, E. & B. Jacobs.

The case was decided below in favor of plaintiffs, and presents the issue as to the legal effect of the subsequent acts of defendant, on the pledge resulting from his own acts, under the provision of Act No. 66 of 1874.

The mere recital of the foregoing facts answers the question and solves the problem.

Under the statute, the delivery of the bill of lading to the carrier for transmission to the consignee, who is shown to have been a creditor of the consignor for a sum exceeding the value of the cotton, including an advance of fifteen hundred dollars on the identical cotton, created a perfect pledge on the same in favor of the factor or consignee.

In the case of Florsheim Bros. vs. Howell, reported in 33 An. 1184, growing out of the seizure of the thirty-seven bales of cotton, making up a portion of this consignment, we considered the legal effect of the pledge thus created, and we held that such pledge would protect the pledgee or consignee, even against the claim of the unpaid vendor of the identical property.

A proper construction of the statute must "*a fortiori*" protect the consignee against any and all the subsequent acts of the debtor himself. Hence, it follows that the legal pledge and possession of plaintiffs, under the consignment, could not be, and were not in the least

affected or divested by the attempt of the defendant to make a sale and a delivery of the cotton to intervenors.

We are not concerned under the issue presented in the case with the question of the ownership of the cotton, under the sale made by Howell to Jacobs. The purchaser of property, under such circumstances, must take it subject to the encumbrances existing on the same, and his rights must be subordinate to the pledge and privilege created by operation of the law in favor of the consignee.

A different construction of the statute, under which the acts of defendant and intervenors could have the legal effect of destroying the privilege, and of divesting the legal possession of the consignee, would place the latter at the mercy of an unscrupulous and dishonest consignor, and would defeat the very object and entire purpose of the law. The debtor in such a transaction has no more power to impair or destroy the security which he has given to his factor, than a mortgagor would have to destroy or cancel the mortgage which he has given to his creditor.

We do not feel authorized to allow the damages prayed for by plaintiffs for a frivolous appeal, for the reason that the statute under consideration creates a new right of pledge which has as yet been interpreted but once by this Court.

Judgment affirmed.